**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| READY SET SERVICE, LLC, | ) | |
| READY SET MERCHANDISING, | ) | |
| LLC, and READY SET SALES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 6718 |
| | ) | |
| GLENN GREENWOOD, PAUL | ) | |
| BERSHATSKY, MIKE WHALEY, and | ) | |
| READY SET DISPLAY AND FIXTURING, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**EMERGENCY MOTION FOR**
**TEMPORARY RESTRAINING ORDER**

Plaintiffs, Ready Set Service, LLC, Ready Set Merchandising, LLC, and Ready Set Sales, LLC, by their undersigned counsel, for their Emergency Motion for a Temporary Restraining Order, state as follows:

**INTRODUCTION**

1.      Contemporaneously herewith, Ready Set Service, LLC ("RSS"), Ready Set Merchandising, LLC ("RSM"), and Ready Set Sales, LLC, (collectively the "Ready Set Companies") filed their Complaint for Temporary, Preliminary, and Permanent Injunctive and Other Relief (the "Complaint") against Defendants Glenn Greenwood ("Greenwood"), Paul Bershatsky, Mike Whaley, and Ready Set Display and Fixture, LLC ("Fixturing").

2.      Greenwood is a former member and officer of RSS and RSM and an employee of RSM. After his affiliation with the Ready Set Companies was terminated, he formed his own company in the Ready Set Companies' industry using the name "Ready Set Display and Fixturing" and domain name www.readysetdisplay.com (the "Domain Name"). Greenwood and

the other Defendants then began to pursue customers of the Ready Set Companies, including Home Depot, using the "Ready Set" name, in an effort to trade on the good will of the Ready Set Companies. Once the Ready Set Companies became aware of Defandants' use of the "Ready Set" name and the Domain Name, they requested that use cease. Through their attorney, Defendants agreed both orally and in writing to cease and desist their use of the "Ready Set" name. However, after prolonged negotiations, Defendants continued to flaunt their unauthorized use of the Ready Set Companies' intellectual property. When confronted by these facts, Defendants refused to honor their agreements and, instead, attempted to extract $25,000 from the Ready Set Companies.

3.     In the Complaint, the Ready Set Companies allege claims that seek an injunction based on Defendants' breach of an agreement with the Ready Set Companies to cease and desist use of the "Ready Set" name and the Domain Name and for the Defendants' unfair competition, deceptive trade practices, and dilution of the Ready Set Companies' service marks.

4.     As a result of Defendants' breach of contract and unfair and deceptive acts, the Ready Set Companies' customer relationships and good will are being damaged by the customer confusion inherent in Defendants use of the "Ready Set" name and by Defendants attempts to palm off their services as affiliated with the Ready Set Companies. In fact, Home Depot, a customer of the Ready Set Companies, has already been confused about Fixturing's affiliation with the Ready Set Companies. Unless Defendants' are restrained and permanently enjoined, such confusion will continue and the Ready Set Companies' customer relationships, business, and goodwill will continue to be irreparably damaged.

**BACKGROUND**

5.      The Complaint sets forth the Ready Set Companies' exclusive interest, by way of prior use, public knowledge and acceptance of the service mark "Ready Set" for the provision of retail in-store merchandising services (the "Service Mark").  The Complaint also alleges that the Ready Set Companies have been using the Service Mark since as early as July 2003.  See, Declaration of George J. Prenta, ("Prenta Dec."), at ¶ 3.

6.      The Complaint also establishes that substantial goodwill has been built up in the minds of retail companies, such as Home Depot and others, such that the mark "Ready Set" has come to be associated exclusively with the Ready Set Companies.  Prenta Dec. at ¶4.

7.      The Complaint further alleges that Defendants, have no ownership, title, interest, privilege or right to use the Service Mark or any right to represent, directly or indirectly, that they are in any way related to the Ready Set Companies.

8.      From their inception until October 26, 2006, Greenwood was a member and officer of RSS and RSM and an employee of RSM.  However, Greenwood entered into an agreement and release with RSS and RSM terminating his relationship with them on or about October 26, 2006. During his tenure with RSS and RSM, Greenwood had regular interaction with customers, often worked in customers' retail stores, and was generally known by the customers of the Ready Set Companies, including Home Depot.  See, Prenta Dec at ¶¶ 5-6.

9.      The records of the Illinois Secretary of State indicate that the limited liability company named  "Ready Set Display and Fixture, LLC" was formed on November 6, 2006.  See, Declaration of Brenda M. Allison ("Allison Dec."), at ¶ 3.

10.      Defendants also submitted Trade Mark Application No. 77/048041 for the mark "Ready Set Display and Fixturing" (the "Application") on November 20, 2006 and, on

information and belief, Defendant Mike Whaley registered the Domain Name on August 28, 2006. Allison Dec. at ¶¶ 4-5.

11.     As fully set forth in the Complaint, in May 2007, the Ready Set Companies became aware of Defendants' use of the "Ready Set" name, along with the use of the Domain Name, in connection with Defendants' provision of retail in-store services. Home Depot contacted the Ready Set Companies regarding marketing materials it had received via email from Ready Set Display and Fixture, LLC ("Fixturing") that included the "Ready Set Display" name and the Domain Name. Prenta Dec. at ¶¶ 7-8.

12.     The Home Depot representative that contacted the Ready Set Companies expressed his confusion about the source of Fixturing's services and mistakenly believed Fixturing was affiliated with the Ready Set Companies. Prenta Dec. at ¶ 9.

13.     Both the Ready Set Companies and Fixturing are in the retail in-store services industry. The Ready Set Companies and Fixturing compete for the same customers. Prenta Dec. at ¶ 10.

14.     Fixturing directly promotes itself to retailers such as those served by the Ready Set Companies, including Home Depot and others, including through its presence at trade shows and its internet presence at the Domain Name. Prenta Dec. at ¶ 11.

15.     By letter dated May 18, 2007, counsel for the Ready Set Companies wrote to Greenwood, advising him that his use of the Domain Name and the "Ready Set" name is likely to cause consumer confusion as to the source, sponsorship, approval or certification of his services with those of the Ready Set Companies, thus constituting unfair competition, dilution, and a deceptive trade practice in violation of federal and Illinois law. That letter is attached to the Complaint as Exhibit A.

16.    After a series of discussions between counsel for the parties, on July 19, 2007, James Gossett, counsel for Defendants left a voicemail for Hal Wood, counsel for the Ready Set Companies.  In that voicemail, Mr. Gossett stated:

> Hi, this is Jim Gossett from Arnstein & Lehr and I got the package of materials you sent in the Ready Set matter and they look to be exactly what your client claimed they would be.  So I'm going to send those to our client and see if he has any problems with immediately ceasing use of the Ready Set name.  Of course he's going to have to change the name of his limited liability company.  That may take some time, I'm not sure how much.  Probably will want to exhaust his existing supply of certain things, but I'll check with him and get back to you probably early next week after he's had an opportunity to look over the materials you sent to me.  I'll talk to you later.

17.    On July 30, 2007, Brenda Allison, counsel for the Ready Set Companies, contacted Mr. Gossett by telephone to follow up on his voicemail message to Mr. Wood.  During that July 30 telephone conversation, Mr. Gossett told Ms. Allison that his client agreed to cease and desist using the "Ready Set" name, and only wanted a short time to make the transition to a new name.  Allison Dec. at ¶ 6.

18.    Based on Mr. Gossett's statement to Ms. Allison, the Ready Set Companies did not file a lawsuit against Defendants at that time.  Prenta Dec. at ¶ 12.

19.    On September 20, 2007, in response to a draft of an agreement sent to him by Ms. Allison, providing for Defendants ceasing to use the Service Mark and the Domain Name, Mr. Gossett sent Ms. Allison an email which stated, in part, "I have no major problem with the substance of the agreement."  In that email, Mr. Gossett stated that he would get back to Ms. Allison on getting the written agreement finalized.  See Exhibits B and C to the Complaint.  See also, Allison Dec. at ¶ 7.

20.    On October 2, 2007, Ms. Allison and Mr. Gossett participated in a telephone conference wherein Mr. Gossett requested that a few minor changes be made to the written

agreement.  One such change included having the Ready Set Companies agree that the new name of Fixturing did not in any way conflict with Defendants' agreement to cease and desist.  Allison Dec. at ¶ 8.

21.    Again, believing that Mr. Greenwood was acting in good faith and because Defendants had already agreed to cease using the "Ready Set" name, counsel for the Ready Set Companies agreed to make some of the requested changes and on October 15, 2007, Ms. Allison sent a slightly revised written agreement to Mr. Gossett.  See, Exhibit D to the Complaint.  See also, Allison Dec. at ¶ 9.

22.    Mr. Gossett sent Ms. Allison an email on that same day stating he would get back to her.   When she did not hear back, Ms. Allison again followed up with Mr. Gossett via email correspondence on October 19, 2007.  Allison Dec. at ¶ 10.

23.    In response, on October 19, 2007, Mr. Gossett stated in an email to Ms. Allison that once he received some information from Greenwood, things "should be finalized by Monday."   Allison Dec. at ¶ 11.

24.    Yet, Ms. Allison did not hear anything the following Monday and, when she followed up with Mr. Gossett, on October 25, 2007, Mr. Gosett said he would need another week on the issue of the new name of Fixturing.   Allison Dec. at ¶ 12.

25.    After Ms. Allison followed up on the status of this again, Mr. Gossett sent an email on October 29, 2007 stating that he would know the new name of Fixturing by the following day.  Allison Dec. at ¶ 13.

26.    When Ms. Allison followed up on November 2, 2007, Mr. Gossett responded via email stating:

I just called our client, and he tells me now that he doesn't want to put his new name in the Settlement Agreement because he doesn't want to tip off your client as to what it is going to be!  As I recall, it was my bright idea to put it in there in the first place, and your client was happy with simply stating that it would not contain "Ready" or "Set."  So, I suppose you have no problem with leaving it out now?

If not, then, with the other changes we discussed and agreed to, it seems we have a "go."  At last!

See, Exhibit E to the Complaint.  See also, Allison Dec. at 14.

27.     That same day, Jay Prenta, President of the Ready Set Companies, learned that Bershatsky had attended the True Serve Dealer Show, an industry trade show, in Atlanta between October 26-29, 2007 and represented himself as affiliated with "Ready Set Display and Fixturing."  Prenta Dec. at ¶ 13.

28.     Ed Martin ("Martin"), RSS's Vice-President of New Business Development, had attended the True Serve Dealer Show.   The show was also attended by many of the Ready Set Companies' customers and potential customers.  See, Declaration of Ed Martin ("Martin Dec.") at ¶ 3 and 4.

29.     At the True Serve Dealer Show, Martin was conversing with a customer of the Ready Set Companies when they were approached by Bershatsky.  Bershatsky handed business cards for "Ready Set Display and Fixturing" to Martin and the customer.  Martin Dec. at ¶¶ 5-6.

30.     When Bershatsky realized that Martin was affiliated with the Ready Set Companies, he told Martin, "We shouldn't be using these but my partner just won't give up this name."  Martin Dec. at ¶ 7.

31.     With the knowledge of Defendants' breach of the agreement to cease and desist reached on July 30, 2007 and continued infringement of the Ready Set Companies, counsel for the Ready Set Companies made one last attempt to have Defendants execute a written agreement

on November 7, 2007 by giving Defendants until 5:00 p.m. on Friday November 9, 2007 to sign

the written agreement.  See, Exhibit F to the Complaint.  See also, Allison Dec. at ¶ 16.

32.     At 4:11 p.m. on November 9, 2007, Ms. Allison received an email from Mr.

Gossett stating:

> Our client just called to tell me that he is not going to sign.  He thinks that he
> expended too much money on the trademark registration and the domain
> registration to give them away.  However, he is willing to sell them for $25,000.

Exhibit G to the Complaint.  See also, Allison Dec. at ¶ 16.

33.     Defendants' actions have, and will, result in damages to the Ready Set Companies

including that they have, and will, incur in attempting to salvage its customer relationships and

goodwill.  Prenta Dec. at ¶ 16-18.

34.     As of the filing of this Motion, Fixturing is still using the "Ready Set" name and

doing business at the Domain Name.  See, Exhibit H to the Complaint.  See also, Prenta Dec. at ¶

15.

35.     Defendants continued use of the "Ready Set" name and the Domain Name is

causing consumer confusion as to the source, sponsorship, approval or certification of

Fixturing's services with those of the Ready Set Companies as well as dilution of the Service

Mark.  Prenta Dec. at ¶¶ 16-18.

## STANDARD FOR ENTRY OF A TEMPORARY RESTRAINING ORDER AND NEED FOR EMERGENCY RELIEF

36.     The issuance of a temporary restraining order, is appropriate where the moving

party can establish: (1) that it has a reasonable likelihood of success on the merits; (2) that it has

no adequate remedy at law; and (3) that it will suffer irreparable harm without injunctive relief.

*Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992).  Once those three

elements are established, the court will consider whether the harm that will occur to the moving

party if no injunction issues outweighs the harm an injunction will cause to the non-moving party. *Id*. Further, the court must consider the public interest in granting or denying the injunction. *Diamond Blade Warehouse, Inc. v. Paramount Diamond Tools, Inc*, 420 F. Supp. 2d 866, 872 (N.D. Ill. 2006). Because the Ready Set Companies can establish each of these elements and the harm to the public interest is greater than any potential harm to the Defendants, this Court should grant the Ready Set Companies a temporary restraining order.

37.    Because they believed that Defendants were acting in good faith and because Defendants already agreed to cease using the "Ready Set" name, the Ready Set Companies did not bring the current action at any earlier time. However, Defendants continued use of the "Ready Set" name, even while admittedly knowing that use should cease, along with the recent inappropriate demand for monetary compensation, clearly demonstrate Defendants' unwillingness to cease and knowledge of the impropriety of their use of the "Ready Set" name and the Domain Name. Further, allowing Defendants' improper association with the Ready Set Companies is causing injury to the Ready Set Companies and must be enjoined immediately.

## ARGUMENT

## I.    The Ready Set Companies Are Likely To Succeed On The Merits Of The Complaint.

38.    The Ready Set Companies will ultimately prevail on the merits of their claims; however, to obtain a temporary restraining order under Illinois law, the Ready Set Companies are not required to make out a case that would entitle them to relief on the merits. *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F. 2d 1079, 1084 (7th Cir. 1988). Instead, they need to show a "better than negligible" chance of succeeding on the merits to justify injunctive relief. *Id*.

39.    As clearly set forth in the Complaint, the actions of Defendants herein constitute the following offenses:

a.    Breach of the agreements to cease and desist use of the Service Mark and the Domain Name and to change the name of Fixturing to a name that does not include the Service Mark, the terms "Ready" or "Set" and is not substantially similar to the Service Mark in any way.

b.    Violation of 15 U.S.C. §1125(a) (the "Lanham Act") by deliberately passing or palming off Defendants' business as one associated with the Ready Set Companies.

c.    Violation of 15 U.S.C. §1125(c) by diluting the Ready Set Companies valuable intellectual property rights.

d.    Violation of 15 U.S.C. §1125(d) by engaging in cyber piracy through their use of the Domain Name.

e.    Common law unfair competition by way of passing or palming off.

f.    Dilution of the Ready Set Companies valuable intellectual property rights by way of unauthorized or unlawful use thereof in violation of 765 ILCS 1035/15.

g.    Deceptive advertising and trade practices in violation of 815 ILCS 510/2.

**A.    Breach of Contract Claims**

40.    For purposes of a temporary restraining order, to demonstrate a likelihood of success on the merits of a claim for breach of an agreement, the plaintiff must show (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and

(4) resultant injury to the plaintiff.  *David White Instruments v. Tlz, Inc.*, 2003 U.S. Dist. LEXIS 331 (N.D. Ill. 2003)

41.    The Ready Set Companies have clearly demonstrated that Defendants agreed to cease and desist from their use of the "Ready Set" name and their use of the Domain Name.  On July 30, 2007, Defendants agreed orally through their attorney, Mr. Gossett and, on November 2 2007, Defendants, again through Mr. Gossett, agreed to the terms of the written agreement as drafted and sent by Ms. Allison on October 15, 2007.

42.    Defendants have clearly breached their agreements to cease and desist from their use of the "Ready Set" name and their use of the Domain name by their continued use of the name.  This is evidenced by, among other things, their use of the name at the True Serve Dealer Show, refusal to sign the written agreement on November 9, 2007, and attempt to extract payment from the Ready Set Companies.

43.    The Ready Set Companies are being injured by Defendants breach of their agreements to cease and desist because their customers are likely being confused by Defendants use of the "Ready Set Display" name and the Domain Name.  Further, the Ready Set Companies' goodwill is being damaged and eroded as Defendants attempt to pass off their services as being affiliated with the Ready Set Companies.

44.    Additionally, the written agreement provides that its cease and desist provisions could be enforced "by injunction proceedings (without the necessity of posting a bond or other security) and to compel specific performance with respect thereto" and that "and that monetary damages for any violation thereof would not adequately compensate the Ready Set Companies." See, Exhibit D to the Complaint.  See also, Allison Dec. at 9.

### B.    Unfair Competition Claims

45.    To succeed on their unfair competition claims, the Ready Set Companies must demonstrate that there is a likelihood that consumers will be confused regarding Defendants' affiliation and association with the Ready Set Companies. *Caterpillar Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913, 918 (N. D. Ill. 2003).  To establish whether a likelihood of confusion exists, there are a number of factors to be considered, although none are dispositive. *Id*.  These factors are: (1) similarity of the marks; (2) similarity of services; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of plaintiff's mark; (6) actual confusion; and (7) intent of defendant to palm his services as those of another. *Id*.  (citations omitted)

46.    It is clear that the factors for the likelihood of consumer confusion weigh in favor of the Ready Set Companies and granting injunctive relief to them.  The Ready Set Companies' rights in the Service Mark are irrefutable.

47.    Defendants' use of the "Ready Set" name and the Domain Name are misleading and deceptive.  Actual confusion already has occurred, as Home Depot was confused about the source of Fixturing's services and mistakenly believed Fixturing was affiliated with the Ready Set Companies.  Not only does actual confusion exist but the likelihood of confusion about Defendants' affiliation with the Ready Set Companies is remarkably high, particularly in light of Greenwood's past association with the Ready Set Companies.  Customers knew and interacted with Greenwood when he was with the Ready Set Companies.  That, along with near identity of the "Ready Set Display and Fixturing" name to the Service Mark, makes the likelihood of consumer confusion inevitable.  Further, both the Ready Set Companies and Defendants are in the same industry and service the same clients.  In fact, Fixturing directly promotes itself to

retailers served by the Ready Set Companies, including Home Depot.  Defendants have clearly engaged in these acts in order to induce consumers to do business with them and to palm their services off as those of the Ready Set Companies.

### C.    Dilution Claims

48.    To establish dilution, a plaintiff must demonstrate (1) his mark is famous; (2) defendants adopted their mark after plaintiff's mark became famous; (3) defendants' use of the mark causes dilution of plaintiff's mark and; and (4) defendants use the mark commercially and in commerce.  *Sullivan v. CBS Corp.*, 2002 U.S. Dist. LEXIS 6625 (N.D. Ill.).  Dilution can occur when the defendants use or modify the plaintiff's mark to identify the defendants' goods or services, raising the possibility that the mark will lose its ability to serve as an identifier of the plaintiff's goods or services.  *Caterpillar*, 287 F. Supp 2d at 921 (citation omitted).

49.    The Service Mark is famous in the retail in-store servicing industry.  See, Prenta Dec. at ¶ 4.  The Service Mark is distinctive and associated exclusively with the Ready Set Companies.   Defendants clearly did not begin using the "Ready Set Display" name until at least three years after the Ready Set Companies did (and with the full knowledge that the Ready Set Companies were using the Service Mark).  Defendants are clearly using the Service Mark to identify their own services and are endangering the Service Mark's ability to uniquely identify the services of the Ready Set Companies.

### D.    Cyber-Piracy Claim

50.    A plaintiff can make a claim for cyber-piracy under 15 USC § 1125 (d) when it can show the defendant (1) has a bad faith intent to profit from the plaintiff's mark; and (2) registers or uses a domain name that is identical, confusingly similar or dilutive of the plaintiff's mark.  15 USCS § 1125 (d).

51.    The Domain Name is practically identical to, in addition to being obviously confusingly similar to and dilutive of, the Service Mark.  Defendants' blatant continued use of the Domain Name demonstrates a bad faith intent to profit off of the Ready Set Companies and the Service Mark.  Greenwood was previously associated with RSS and RSM and was obviously aware of the Ready Set Companies' use of the Service Mark and that Defendants use of the Domain Name would allow them to take trade on the goodwill and meaning of the "Ready Set" name built up by the Ready Set Companies.

52.    Defendants' attempt to sell the Domain Name to the Ready Set Companies for $25,000 (after Defendants had already agreed to cease and desist using the "Ready Set" name and to assign the Domain Name to the Ready Set Companies) clearly demonstrates that Defendants were aware of the similarity of the Domain Name to the Service Mark and that Defendants had, and continue to have, a bad faith intent to profit from the Service Mark.

## II.    The Ready Set Companies Have An Inadequate Remedy At Law

53.    The Ready Set Companies have no adequate remedy at law for the harm caused by Defendants.  If Defendants are permitted to continue to use the "Ready Set" name and the Domain Name, the Ready Set Companies will lose the goodwill they have built up in the Service Mark and their customer relationships will be irreparably damaged.  The loss of goodwill and customer relationships can be fatal to a business and cannot be easily calculated or cured with an award of monetary damages.  *Diamond Blade Warehouse*, 420 F. Supp. 2d at 872 (N.D. Ill. 2006).

54.    Additionally, in the written agreement, Defendants acknowledged "monetary damages for any violation [of any of the cease and desist provisions as well as the assignment of

the Domain Name] would not adequately compensate the Ready Set Companies." See, Exhibit D to the Complaint. See also, Allison Dec. at 9.

**III.    The Ready Set Companies Will Suffer Irreparable Harm Without an Injunction**

55.    Defendants' actions of breaching the agreement to cease and desist using the "Ready Set Display" name and the Domain Name and of infringing upon the Ready Set Companies' Service Mark is causing irreparable harm to the Ready Set Companies. The Ready Set Companies' customer relationships and goodwill are being eroded while Defendants are using the "Ready Set Display Name" and the Domain Name.

56.    The law's presumes that trademark dilution or infringement threatens irreparable injury for which there is no adequate remedy at law. *Abbott Lab. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992); *International Kennel Club, Inc.*, 846 F.2d at 1092.

**III.    Issuing Injunctive Relief Will Not Unduly Harm Defendants or the Public Interest.**

57.    The harm that will occur to the Ready Set Companies if this court does not issue an injunction outweighs any potential harm an injunction would cause to Defendants.

58.    Further, the issuance of injunctive relief will not harm but rather benefit the public interest. The issuance of a temporary restraining order provides immediate relief to consumers who are and may be confused by Defendants' use of the "Ready Set" name and apparent, but false affiliation with the Ready Set Companies. Enforcement of trademark law serves the public interest by reducing consumer confusion. *International Kennel Club of Chicago,* 846 F.2d at 1092 n.8.

59.    No hardship to Defendants can result from the injunction being sought because Defendants have absolutely no right to the "Ready Set" name, the Service Mark or any other valuable intellectual property of the Ready Set Companies.

60.    According to *CUNA Mutual Life Insurance Co. v. Kuperman*, 1998 U.S. Dist Lexis 622 (N.D. Il. 1998), "Illinois courts have recognized the strong public interest in protecting fair competition."  Defendants are clearly unfairly competing by using the "Ready Set" name and the Domain Name and causing consumer confusion.

## CONCLUSION AND PRAYER FOR RELIEF

61.    Defendants are engaging in a willful effort both to infringe on the Ready Set Companies' intellectual property and to breach the agreement to cease and desist using the "Ready Set" name and the Domain Name.

62.    The Ready Set Companies are entitled to a temporary restraining order because, as described above, they have a likelihood of success on the merits, the injury to the Ready Set Companies will be irreparable if Defendants are permitted to continue their actions and money damages could not possibly compensate the Ready Set Companies for these actions.

63.    The harm that the Ready Set Companies will suffer if they are not granted injunctive relief is greater than any harm Defendants may suffer by not being allowed to continue their use of the "Ready Set" name and the Domain Name.  Further, the injunctive relief sought by the Ready Set Companies does not harm but benefits the public interest.

64.    Only this Court, through the issuance of a temporary restraining order preventing Defendants from continuing their wrongful course of conduct, can adequately protect the Ready Set Companies and their interests.

65.    In support of this Motion, Plaintiff has contemporaneously filed the Declarations of George J. Prenta, Brenda M. Allison, and Ed Martin.

WHEREFORE, the Ready Set Companies respectfully request that this Court enter an

Order:

     a.   Enjoining Defendants from using the Ready Set Companies Service Mark, or the terms Ready" or "Set" or any mark substantially similar to the Service Mark in any way, as a service mark, trademark, trade name component or otherwise to market, advertise or identify Defendants' retail merchandising services and/or products;

     b.   Enjoining Defendants from otherwise infringing the Ready Set Companies' Service Mark, including using the Domain Name or pursuing the Application;

     c.   Enjoining Defendants from unfairly competing with the Ready Set Companies' in any manner whatsoever;

     d.   Enjoining Defendants from causing likelihood of confusion, injury to business reputation or dilution of the distinctiveness of the Ready Set Companies' Service Mark;

     e.   Ordering Defendants to perform their obligations under the written agreement, including filing all documents necessary to abandon the Application and transfer the Domain Name to Plaintiffs;

     f.   Awarding this relief without the necessity of Plaintiffs posting a bond therefore; and

     g.   Granting such other relief as this Court deems just and proper.

**READY SET SERVICE, LLC, READY SET MERCHANDISING, LLC ("RSM"), and READY SET SALES, LLC**
        **Plaintiffs**


By:     s/ Brenda M. Allison    
               Counsel for Plaintiffs

Hal J. Wood (ARDC # 6217069)
Brenda M. Allison (ARDC # 6277040)
**HORWOOD MARCUS & BERK CHARTERED**
180 North LaSalle Street
Suite 3700
Chicago, Illinois 60601
(312) 606-3200